

# NUMBER 13-06-00547-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TEXAS STATE BOARD OF DENTAL EXAMINERS,**         **Appellant,**

**v.**

**MISTY J. BROWN, D.D.S.,**         **Appellee.**

---

### On appeal from the 126th District Court
### of Travis County, Texas.

---

# O P I N I O N

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Opinion by Justice Rodriguez

This is an appeal from a district court's reversal of a sanctions order in a contested

case hearing under the Texas Administrative Procedure Act (APA).[1] *See generally* TEX.

---

[1]This case was transferred from the Third Court of Appeals to the Thirteenth Court of Appeals as part of the Texas Supreme Court's docket equalization program. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if our decision otherwise would have been inconsistent with the precedent of the transferor court. *See* TEX. R. APP. P. 41.3. We are not, however, aware of any conflict between the precedent of the Austin court and the precedent of this Court on any issue relevant in this appeal. *See id.*

GOV'T CODE ANN. §§ 2001.001-.902 (Vernon 2008); *see also id.* § 2001.003 (defining "contested case" as "a proceeding . . . in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing"). By eight issues, appellant, the Texas State Board of Dental Examiners (Board), contends that it, not the Administrative Law Judge (ALJ), has the authority to determine whether sanctions should be imposed against appellee, Misty J. Brown, D.D.S.;[2] that there is substantial evidence to support the Board's findings and the restitution ordered; and, that the Board properly deleted certain of the ALJ's findings of fact and conclusions of law and articulated its reasons for doing so. By one issue on cross appeal, Dr. Brown contends that the doctrine of res judicata applies. We reverse and render.

## I. Background

On April 29, 2003, Dr. Brown's dental license was temporarily suspended by order of the Board's Executive Committee. On June 20, 2003, the Board and Dr. Brown entered into an agreed settlement order (ASO) to resolve issues in dispute at that time. The ASO imposed a ten-year suspension period, probated except for two separate four-month periods during which time Dr. Brown was not to practice dentistry, and assessed $10,000 in fines. It required, among other things, that Brown participate in a mentoring and monitoring program with a dentist approved by the Board Secretary and that she participate in the Texas Dental Peer Assistance Program. It also provided that if Brown violated any of the terms of the ASO, the Board would initiate proceedings to revoke her license.

---

[2]Misty J. Brown, D.D.S., was previously married and known as Dr. Staffel. Both names are used throughout the record. For ease of reference we will refer to appellant as Dr. Brown.

On October 16, 2003, the Board filed a complaint against Dr. Brown with the State Office of Administrative Hearings (SOAH). *See* TEX. GOV'T CODE ANN. § 2003.021 (Vernon 2008). On May 18, 2004, the Board filed an amended complaint asserting that, among other things, Dr. Brown violated the ASO by (1) performing dental acts on patient C.R. on or about June 3, 2003, while her license was suspended; (2) receiving remuneration from dentistry while her license was suspended; (3) failing to participate in a mentoring program with an approved licensed dentist; and (4) failing to participate in the Board's peer assistance program protocols, including the signing of a participation and monitoring agreement. The Board also complained that Dr. Brown (1) conducted herself dishonorably toward E.B., a minor dental patient, and A.B., the minor patient's mother; (2) failed to make, keep, and maintain dental records on E.B.; and (3) allowed her assistants to perform non-delegable dental work on T.M.

After a three-day contested trial, convened by the SOAH with an ALJ presiding, *see id.* § 2003.042 (Vernon 2008), the ALJ recommended, in her Proposal for Decision (PFD), that Dr. Brown not be subjected to any additional sanctions. *See id*. § 2003.042(6). The ALJ based her recommendation on the following relevant conclusions that were, in turn, based on her findings of fact not recited here:

4. Based on the findings of fact, while her license was suspended, Dr. Brown did not practice dentistry nor receive remuneration from the practice of dentistry, as the practice of dentistry is defined in TEX. OCC. CODE ch. 259 *et seq*.

5. Based on the findings of fact, Dr. Brown did not violate the terms of her Agreed Settlement Order.

6. Based on the findings of fact, [the Board] Staff prevented Dr. Brown from complying with the terms of her Agreed Settlement Order . . . .

3

7.    Based on the findings of fact, Dr. Brown failed to keep adequate dental records on one patient in violation of 22 TEX. ADMIN. CODE § 108.8.

8.    Based on the findings of fact, Dr. Brown did not violate the minimum standard of care with respect to the treatment of T.M.'s teeth under TEX. OCC. CODE ch. 258, and 22 TEX. ADMIN. CODE § 108.7.

9.    Based on the findings of fact, Dr. Brown impermissibly delegated dental work to a non-dentist in one instance, in violation of TEX. OCC. CODE §§ 259.001, 259.008(3), 22 TEX. ADMIN. CODE §§ 108.1(3), 114.1.

. . .

11.   Based on the findings of fact, Dr. Brown did not commit dishonorable conduct under 22 TEX. ADMIN. CODE §108.9.

. . .

13.   Based on the findings of fact and conclusions of law, the ALJ finds that no sanctions should be imposed against Dr. Brown for the violations in this case.

At a public meeting, after considering the PFD, the Board declined to accept the ALJ's recommendation. The Board deleted some ALJ findings and disregarded others. It also deleted ALJ conclusions of law 4, 5, 6, 10, and 13. And, in its final order signed May 9, 2005, the Board imposed additional sanctions. By its order, the Board suspended the dental license of Dr. Brown for fifteen years, probated for the entire period, assessed a $20,000 administrative fine, and ordered restitution to one patient in the amount of $1,805. The Board again ordered Dr. Brown to participate in a designated peer assistance program for the duration of the Board's order.

Dr. Brown sought judicial review in district court. *See* TEX. GOV'T CODE ANN. § 2001.171; TEX. OCC. CODE ANN. § 263.009 (Vernon 2004) ("A person aggrieved by a decision of the board under this chapter is entitled to appeal as provided by Chapter 2001,

4

Government Code."). Upholding the ALJ's PFD, the district court reversed and remanded the Board's order. The Board appeals from the final judgment of the district court. *See* TEX. GOV'T CODE ANN. § 2001.145.

## II. Authority to Sanction

By its first and second issues, the Board generally contends that it, not the ALJ, is the ultimate decision maker concerning sanctions, even when the ALJ's disciplinary recommendation is set out as a conclusion of law rather than as a recommendation. It also argues that section 2001.058(e) is not implicated in this case, but if it is, the Board appears to argue that it complied with the requirements to provide a "specific reason and legal basis" for the change. *See id.* § 2001.058(e).

## A. Agency or ALJ

"[T]he choice of penalty is vested in the agency, not in the courts." *Sears v. Tex. State Bd. of Dental Exam'rs*, 759 S.W.2d 748, 751 (Tex. App.–Austin 1988, no pet). "The agency is charged by law with discretion to fix the penalty when it determines that the statute has been violated." *Id.* (citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984)). Thus, the Board "is not required to give presumptively binding effect to an ALJ's recommendation regarding sanctions in the same manner as with other findings of fact and conclusions of law." *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 781 (Tex. App.–Austin 2005, pet. denied). The mere labeling of a recommended sanction as a conclusion of law or as a finding of fact does not change the effect of the ALJ's recommendation. *See id.* Therefore, we agree that the Board, not the ALJ, is the decision maker concerning sanctions in this case.

5

The Board also notes that although section 2001.058(f) provides that a state agency, by rule, may grant authority to the ALJ to render a final decision, *see* TEX. GOV'T. CODE ANN. § 2001.058(f), the Board has promulgated no such rule. Therefore, it contends that section 2001.058(f) provides no basis for the ALJ to have been given final-decision-making authority regarding sanctions in this case. We agree that section 2001.058(f) provides no such basis in this case.

## B. Section 2001.058(e) Implicated

The Board also asserts, in its first two issues, that it was not required to justify why it disregarded the ALJ's penalty recommendation. It argues that because the recommendation was not a conclusion of law, the agency should not have to justify its alteration of the ALJ's recommendation under section 2001.058(e), especially when the agency has not promulgated a rule under section 2001.058(f). *See* TEX. GOV'T CODE ANN. § 2001.058(e), (f). Under the facts of this case, we disagree.

Section 2001.058(e) permits a state agency to change an ALJ's finding of fact or a conclusion of law or vacate or modify an ALJ's order when the agency determines that (1) the ALJ improperly applied or interpreted applicable law, agency rules or policies, a written statement of applicable rules or policies, or prior administrative decisions; (2) the ALJ based her decision on a prior administrative decision that is incorrect or should be changed; or (3) a finding of fact contains a technical error that should be changed. *Id.* § 2001.058(e)*; see* 22 TEX. ADMIN. CODE ANN. § 107.51(a) (2008) (State Bd. of Dental Exam'rs, Findings of Fact and Conclusions of Law). When doing so, "[t]he agency shall state in writing the specific reason and legal basis for a change under this subsection."

6

TEX. GOV'T CODE ANN. § 2001.058(e); *see* 22 TEX. ADMIN. CODE ANN. § 107.51(b) (2008) (State Bd. of Dental Exam'rs, Findings of Fact and Conclusions of Law).

In *Granek v. Texas State Board of Medical Examiners*, the Board rejected the ALJ's recommended penalty that was set out as two separate conclusions of law. 172 S.W.3d at 781. Because the Board rejected the recommendation, the Austin court concluded section 2001.058(e) was implicated. *Id.; see Pierce v. Tex. Racing Comm'n*, 212 S.W.3d 745, 752 (Tex. App.–Austin 2006, pet. denied) (holding that when the commission modified the ALJ's penalty recommendation it complied with section 2001.058(e) by expressly setting forth in its final order the reasons and legal basis for its modification; explaining "that the ALJ had failed to properly apply or interpret applicable law, agency rules, and written policies because her recommendation was inconsistent with the commission's precedent regarding the enforcement policy and guidelines"); *see also Grotti v. Tex. State Bd. of Medical Exam'rs*, No. 03-04-00612-CV, 2005 Tex. App. LEXIS 8279, *26-31 (Tex. App.–Austin Oct. 6, 2005, no pet.) (mem. op.) (concluding that the Board complied with section 2001.058(e) by stating the specific reason and legal basis for eliminating a finding of fact characterized as a sanction recommendation; explaining that the recommendation was too lenient to effectively punish the doctor for suffocating a patient even though the patient was in the process of dying).

In the present case, the ALJ chose to set out her sanction recommendation as a conclusion of law. She identified it as such. The Board rejected the conclusion of law. We conclude, therefore, as did the court in *Granek*, that by the Board's actions in disregarding the ALJ's conclusion of law that set out her penalty recommendation, section 2001.058(e)

7

is implicated.[3]  *See* TEX. GOV'T CODE ANN. § 2001.058(e).  And,  we are not persuaded by the Board's argument that only when a rule has been promulgated under section 2001.058(f) should the Board be required to justify why it disagreed with the recommendation.  The Board provides us with no authority, and we find none, that supports this assertion.

### C.  Compliance with Section 2001.058(e)

Having concluded that 2001.058(e) is implicated in this case, we must, therefore, determine whether the Board complied by providing a specific reason and legal basis for rejecting the ALJ's sanction recommendation.  *See id.*  The Board asserts, throughout its first and second issues, that because the ALJ found that Dr. Brown had two violations of law and the Board adopted those violations in its final order, the Board had authority to change the ALJ's recommendation of no penalties.  Dr. Brown responds that the Board cannot change the ALJ's conclusion of law regarding sanctions without referencing the findings on which it is based.  From these arguments, Dr. Brown is apparently arguing that the Board did not comply with section 2001.058(e), while the Board is contending it did comply.[4]

In *Granek*, although the court ultimately concluded that a portion of the medical board's explanation violated section 2001.058(e) because it was based on unproven allegations and was arbitrary and capricious, the court concluded that the medical board

---

[3]We do not determine, under the facts of this case, whether 2001.058(e) is implicated when the Board rejects an ALJ's disciplinary recommendation that is not set out as a conclusion of law.

[4]We note that, in its brief, the Board states that "Dr. Brown correctly points out that the Board did not 'discuss' in its Final Order why it disagreed with the ALJ's penalty recommendation."  However, the Board provided written reasons and a legal basis for its decision to delete the ALJ's conclusion of law regarding sanctions and extensively argues, on appeal, that it had support for its decision to disregard the ALJ's recommendation.  We, therefore, do not consider this statement as a concession on the part of the Board.

did provide a "'specific reason and legal basis' for its rejection of . . . the sanctions the ALJ had recommended." *Id.* at 781-82. The medical board in *Granek* explained that the ALJ's proposed conclusions of law were not conclusions but recommended sanctions and while the ALJ may recommend a sanction, it is up to the medical board to determine appropriate sanctions. *Id.* at 781. The medical board concluded that revocation of Granek's license was the only sanction that would protect the public and elaborated regarding its reasons for imposing that penalty. *Id.*

In this case, the ALJ's conclusion of law 13 provided the following: "[b]ased on the findings of fact and conclusions of law, the ALJ finds that no sanctions should be imposed against Dr. Brown for the violations in this case." The Board disagreed with the ALJ's sanction recommendation and rejected it. In its written reasons and legal bases for deleting the ALJ's conclusion of law 13, the Board stated the following:

> The Board believes that disciplinary action is warranted in this matter based solely upon the following Findings of Fact and Conclusions of Law:
>
> 1. [Board] Finding of Fact Nos. 3, 6, 7 and 9, and Conclusion of Law Nos. 1, 2, 3, 4, 5 and 6[5] . . . . [and]

---

[5]The Board's disciplinary determination was based on the following findings of fact and conclusions of law made by the Board:

BD[FOF] 3      ALJ Finding of Fact No. 11 lacks a minimal basis of rationality in light of the evidentiary record. [Dr. Brown] is the sole shareholder of the stock in her dental corporation. During her suspension, [Dr. Brown] hired temporary dentists to practice dentistry and received the proceeds of insurance funds from the temporary dentist's practice of dentistry. [Dr. Brown] violated the terms of her (ASO) by practicing dentistry while her license was suspended.

. . .

BD[FOF] 6      Dr. Brown's employment of temporary dentists to work in her practice while her license was actively suspended was an attempt to circumvent an order of the [Board].

BD[FOF] 7      Dr. Brown's employment of temporary dentists to work in her practice while her license was actively suspended was a failure to exercise reasonable diligence to prevent partners, associates or employees from engaging in conduct that supported the practice of dentistry without a license.

9

2. ALJ Finding of Fact Nos. 9, 10 and 40, and ALJ Conclusion of Law Nos. 7 and 9 . . . .[6]

. . .

BD[FOF]9   Dr. Brown's offer to show E.B., a seventeen-year old girl, and A.B., E.B.'s mother, the scars on her breasts from surgery was not appropriate and constitutes dishonorable and unprofessional conduct.

. . .

BD[C0L] 1   Based upon finding of fact No. 3 and ALJ findings of fact Nos. 9 and 10, Dr. Brown practiced dentistry during her period of suspension, as the practice of dentistry is defined by TEX. OCC. CODE § 251.003 (a)(4).

BD[COL] 2   Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9 and 10, Dr. Brown attempted to circumvent an order of the [Board] in violation of 22 Tex. Admin. Code §§108.1(1), 108.1(2) and 108.1(3).

BD[COL] 3   Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9 and 10, Dr. Brown failed to exercise reasonable diligence to prevent associates or employees from engaging in conduct that supported the practice of dentistry without a license in violation of 22 Tex. Admin. Code §§ 108.1(4) and 108.1(5).

BD[COL] 4   Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9 and 10, Dr. Brown violated the terms of her ASO.

BD[COL] 5   Based upon finding of fact No. 9, Dr. Brown committed unprofessional conduct under TEX. OCC. CODE § 259.008.

BD[COL] 6   Based upon finding of fact No. 9, Dr. Brown committed dishonorable conduct under 22 TEX. ADMIN. CODE § 108.9.

(Citations to the record omitted.).

[6]The Board's disciplinary action was also based on the following ALJ's findings of fact and conclusions of law:

ALJ[FOF] 9   Dr. Brown hired and paid temporary dentists to work in her practice while her license was actively suspended.

ALJ[FOF] 10   The temporary dentists received the money from their practice, minus the cost of overhead and lab work.

. . .

ALJ[FOF] 40   Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s teeth.

. . .

ALJ[COL] 7   Based on the findings of fact, Dr. Brown failed to keep adequate dental

10

The Board explained, in writing, that the disciplinary action was warranted and identified the findings of fact and conclusions of law that it determined supported that action. It is apparent that the Board's written explanation for changing the ALJ's disciplinary recommendation implicates the ALJ's improper application of law—that the imposition of additional sanctions was supported and that the Board, not the ALJ, determines the penalty. *See* TEX. GOV'T CODE ANN. § 2001.058(e)(1); *Sears*, 759 S.W.2d at 751. We conclude, therefore, that the Board provided a specific reason and legal basis for the Board's actions and, thus, complied with section 2001.058(e). *See* TEX. GOV'T CODE ANN. § 2001.058(e).

Agreeing with the Board that it, not the ALJ, has the authority to determine sanctions in this case, we sustain the Board's first and second issues on that basis. Moreover, having concluded that section 2001.058(e) is implicated in this case, we also sustain the first and second issues to the extent the Board is asserting it complied with section 2001.058(e) after rejecting the ALJ's sanction recommendation that had been set out as a conclusion of law.

## III. Dishonorable Conduct

By its third issue, the Board contends that there is substantial evidence—more than a scintilla of evidence—to support the Board's finding that Dr. Brown's offer to show E.B.,

---

records on one patient in violation of 22 TEX. ADMIN. CODE § 108.8.

. . .

ALJ[COL] 9   Based on the findings of fact, Dr. Brown impermissibly delegated dental work to a non-dentist in one instance, in violation of TEX. OCC. CODE §§258.001, 258.002, 259.008(3), 22 TEX. ADMIN. CODE §§108.1(3), 114.1.

11

a minor patient, scars on her breasts was dishonorable.[7] It asserts that there is a reasonable basis in the record for its conclusion that Dr. Brown committed dishonorable conduct—conduct that the Board claims would support its sanction order.

## A. Standard of Review

This Court reviews the Board's final order under the substantial evidence rule. *See* TEX. GOV'T CODE ANN. § 2001.174. "Substantial evidence means more than a mere scintilla; thus, the evidence may preponderate against the agency's decision, yet still amount to substantial evidence." *Matthews v. Scott*, 268 S.W.3d 162, 172 (Tex. App.–Corpus Christi 2008, no pet.) (quoting *Miller v. Houston Indep. Sch. Dist.*, 51 S.W.3d 676, 680 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) (citing *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam))). Whether the Board's order is supported by substantial evidence is a question of law which we review de novo. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000); *Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 511 (Tex. App.–Austin 2007, no pet.).

Under the substantial evidence rule, we give significant deference to the agency in its field of expertise. *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). We presume that the agency's order is valid and that its findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the party challenging the decision. *Id.* at 453; *see Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.–Austin 1999, no pet.). "[W]e will sustain an agency's finding if reasonable minds could have reached the same

---

[7]The Board also concluded that Dr. Brown's conduct was unprofessional and appears to contend on appeal that there is substantial evidence to support this conclusion. *See* TEX. OCC. CODE ANN. § 259.008 (Vernon 2004). However, because of the disposition of this issue on the basis of dishonorable conduct, we need not address this contention. *See* TEX. R. APP. P. 47.4.

conclusion," *Hinkley v. Tex. Bd. of Med. Exam'rs*, 140 S.W.3d 737, 743 (Tex. App.–Austin 2004, pet. denied) (citing *Tex. State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988)), even if the evidence actually preponderates against it. *Sw. Pub. Serv. Co./PUC v. PUC*, 962 S.W.2d 207, 215 (Tex. App.–Austin 1998, pet. denied). We are ultimately concerned with the reasonableness of the agency's order, not its correctness. *See Sanchez*, 229 S.W.3d at 511.

## B. Applicable Law

A dentist is called upon to conduct her practice on the highest plane of honesty, integrity, and fair dealing. *See* 22 TEX. ADMIN. CODE ANN. § 108.1 (2008) (State Bd. of Dental Exam'rs, Prof'l Responsibility). A dentist is in violation of the Board's rules when she engages in dishonorable conduct which includes, among other things, engaging "in conduct that has become established through professional experience as likely to disgrace, degrade or bring discredit upon him or her or the dental profession." *Id.* §108.9(6) (2008).

## C. Analysis

At the hearing before the ALJ, E.B. was asked if there were any behaviors that gave her particular cause for concern. E.B. responded, providing the following testimony:

> One of the instances that I can recall extremely clear is on the third attempt to do my veneer I had a temporary put on. And I was very upset with what it looked like. It was very discolored. It was brown. And I was very disappointed with it. I was crying. And Misty - Dr. Brown sat me on her lap as if I were a child and proceeded to tell me about her breast cancer, which was a well-known fact throughout the office because with the breast cancer poster that she had on the wall. It wasn't a secret that she had breast cancer and she proceeded to tell me about that and adjusted her wig, as if to compare our stories. And I had this discolored tooth and she had breast cancer, just trying to, I guess, console me, but I've never had anyone to sit me on their lap and tell me this. She also offered to show my mother and I her breast, just as if to compare, look, I have cancer; you have a brown tooth. I can feel your pain, I guess. And I never had anyone offer to show me their breast and I thought that was just ridiculous.

13

At the same hearing, E.B.'s mother testified about Dr. Brown's conduct as follows:

The third treatment that my daughter had, she was very upset because Dr. Brown gave her a brown tooth, which was very upsetting with her. And Dr. Brown tried to console her, which is fine, but then she said, you think you have got something to cry about? Let me show you my breasts. And we both said, oh no, no, it is fine. We don't want to see your breasts, thank you. We both thought it was very inappropriate.

Finally, at the hearing, Dr. Brown responded as follows:

Q      You've heard the testimony of . . . E.B. and . . . A.B. that you offered to show them your breasts. Did you do that?

A      No.

Q      Did you make a reference to you having had surgery?

A      No.

Q      Did you ever expose yourself to a patient?

A      No.

Although Dr. Brown denied that she offered to show E.B. and A.B. her breasts, the ALJ determined that E.B. and A.B. testified credibly regarding the incident and found that Dr. Brown offered to show her breasts to E.B. and A.B. Nonetheless, in the following analysis set out in the PFD, the ALJ noted that, under the circumstances, the offer,

was not unprofessional or dishonorable conduct. Dr. Brown was talking with her patient about the problems with her teeth and was attempting to console her by showing her that other people have health issues as well. Dr. Brown's offer to show E.B. and A.B. her breasts as a way of consoling the patient was not conduct that is likely to bring disgrace or discredit on Dr. Brown or on the dental profession. E.B. and A.B. are both female. Dr. Brown offered to show them the results of breast surgery that had left her somewhat disfigured—just as E.B. was somewhat disfigured because of her teeth. Therefore, the ALJ finds that Dr. Brown's offer to E.B. and A.B. to show her breast scars was not dishonorable or unprofessional conduct as defined by statute and rule.

14

The ALJ also wrote that "Dr. Brown had undergone breast surgery. Although she did not have breast cancer, she indicated to several people that she did. Dr. Brown did have breast disease and has been diagnosed with another form of cancer."

The ALJ found that "Dr. Brown's offer to show E.B., a seventeen-year old girl, and A.B., E.B.'s mother, the scars on her breasts from surgery was appropriate given the circumstances and E.B.'s anger and frustration." The ALJ concluded that "Dr. Brown did not commit dishonorable conduct."

Disagreeing with this determination, the Board deleted the ALJ's finding and conclusion regarding this behavior and explained, in its Written Reasons and Legal Bases for Changing the Administrative Law Judge's Proposal for Decision, that (1) the ALJ failed to properly apply and interpret agency rules regarding dishonorable conduct, (2) the ALJ's determination would create an impermissible policy precedent, (3) it is appropriate to establish a clear precedent that it is dishonorable for a dentist to offer to show a patient the dentist's private body parts in the course of the practice of dentistry even if it is to console the patient, and (4) Dr. Brown's offer to show a patient scars on her breasts to console the patient constitutes conduct that is likely to disgrace, degrade and bring discredit upon a dental licensee and the dental profession. *See* TEX. GOV'T CODE ANN. § 2001.058(e)*.* The Board set out in its own finding that "Dr. Brown's offer to show E.B., a seventeen-year old girl, and A.B., E.B.'s mother, the scars on her breasts from surgery was not appropriate and constitutes dishonorable and unprofessional conduct." In the Board's conclusion of law, the Board concluded that "Dr. Brown committed dishonorable conduct" under chapter 22, section 108.9 of the administrative code. *See* 22 TEX. ADMIN. CODE ANN. § 108.9(6) (State Bd. of Dental Exam'rs, Dishonorable Conduct); *see also* TEX. OCC. CODE ANN. §

15

263.002(a)(3) (Vernon 2004) (providing that the practice of dentistry in a manner that constitutes dishonorable conduct is a ground for disciplinary action).

Based on our review of record and giving significant deference to the Board in its field of expertise, *see Charter Med.*, 665 S.W.2d at 452, we conclude that reasonable minds could have reached the same conclusion as that reached by the Board. *See Hinkley*, 140 S.W.3d at 743. A reasonable mind might accept such relevant evidence as adequate to support the Board's conclusion that Dr. Brown's offer to show E.B. and A.B. the scars on her breasts from surgery was not appropriate; that the complained-of behavior constituted dishonorable conduct. Accordingly, we conclude that there was substantial evidence to support the Board's conclusion that Dr. Brown practiced dentistry in a manner that constitutes dishonorable conduct as defined in section 108.9. *See* 22 TEX. ADMIN. CODE ANN. § 108.9(6). We sustain the Board's third issue.

## IV. Inadequate Dental Records and Impermissible Delegation of Dental Work

In addition to the dishonorable conduct finding that provides support for its disciplinary determination, the Board argues that its decision is supported by the ALJ's conclusions and findings that Dr. Brown failed to keep adequate dental records on one patient and that she impermissibly delegated dental work to a non-dentist in one instance. The Board adopted these conclusions and findings.

The ALJ based her conclusion that Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s teeth on her finding that the Board met its burden of proof to show that Dr. Brown allowed her assistants to perform non-delegable dental work on T.M. The ALJ wrote the following in her PFD:

> T.M. testified that Dr. Brown cemented crowns in her mouth, but that other
> individuals in the office performed adjustments. T.M. described the people

16

who did the adjustments as hygienists. She indicated that these individuals put the crowns in her mouth, had her bite down, then removed the crowns and left the room to return shortly thereafter and recheck the bite. According to T.M., the hygienist also filed the crowns and the opposing tooth. Dr. Vinings testified that he believed from looking at the work in T.M.'s mouth that it was possible someone other than a licensed dentist had performed the work. Dr. Brown testified that she performed the work to grind the teeth herself. T.M.'s chart also indicates that a dentist ground the teeth to make them fit. The ALJ finds that T.M.'s testimony about the hygienists grinding teeth inside her mouth was credible. The ALJ also finds that Dr. Brown's testimony and the patient's chart are credible. The ALJ finds that it is likely that both Dr. Brown and assistants adjusted T.M.'s teeth. Only dentists are permitted to make adjustments to teeth in the mouth. Therefore, the ALJ concludes that Dr. Brown improperly delegated an act that must be performed by a dentist, namely the removal of tooth structure, to someone other than a licensed dentist.

(Record citations omitted.)

In addition, the ALJ based her conclusion that Dr. Brown failed to keep adequate dental records on E.B. on her findings that E.B's chart contained neither a written review of medical history, a medical exam, radiographs and findings, a treatment plan, or a written informal consent nor an explanation why the chart was incomplete. The ALJ's analysis on these findings and conclusion in her PFD set out the following:

> Dr. Brown contends that she maintained adequate records on E.B. but that E.B. stole her chart after Dr. Brown told E.B. that she was going to document E.B.'s inappropriate behavior in her chart. Dr. Brown admits that she recreated E.B.'s chart after she discovered it was missing. She also admits that the information in the recreated chart was not complete. The ALJ finds that Dr. Brown did not maintain adequate dental records on patient E.B.

> The Board's rules establish the items that need to be included in a patient's chart. The items include the name of the patient, vital signs, medical history, radiographs, etc. E.B.'s chart, as Dr. Brown provided it to the Board was missing most of these items. In addition to the items required to be included in the chart, the rule indicates that if certain items are not included in the chart, the chart must indicate an explanation as to why the item is not included. In this case, Dr. Brown did not indicate in the chart why items were not included. Therefore, the ALJ finds that Dr. Brown failed to keep adequate patient records on E.B.

17

(Record citations omitted.) Dr. Brown does not challenge the ALJ's findings and conclusions regarding the above violations.

The Board has offered more than one ground as a basis for its decision. Based on our de novo review, we conclude that the Board's disciplinary decision is supported by the dishonorable conduct finding and the two violations found by the ALJ and adopted by the Board. The Board's findings and conclusions are supported by substantial evidence. When an agency offers more than one ground as the basis for its decision, we will affirm if we find substantial evidence supporting one ground even if all bases given would be independently sufficient to support the decision. *Tex. State Bd. of Med. Exam'rs v. Scheffey*, 949 S.W.2d 431, 436 (Tex. App.–Austin 1997, writ denied); *see City of Corpus Christi v. PUC*, 188 S.W.3d 681, 695 (Tex. App.–Austin 2005, pet. denied). Noting that our review is ultimately concerned with the reasonableness of the agency's order, not its correctness, *see Sanchez*, 229 S.W.3d at 511, we could affirm the Board's order on this basis.

## V. Restitution

In its seventh issue, the Board contends that there is more than a scintilla of evidence supporting restitution to patient, T.M. It also asserts that the district court erred in reversing the award of restitution and that harm is not a factor to consider in determining whether restitution should be paid.

### A. Substantial Evidence to Support Order of Restitution

As set out in our analysis of the Board's first and second issues, the ALJ clearly analyzed, found, and concluded that Dr. Brown improperly allowed her assistants to perform non-delegable dental work on T.M. *See* TEX. OCC. CODE ANN. § 258.001 (Vernon

18

Supp. 2008), § 258.002 (Vernon 2004), § 259.008(3) (Vernon 2004); 22 TEX. ADMIN. CODE ANN. §§ 108.1(3), 114.1 (2008) (State Bd. of Dental Exam'rs, Permitted Duties). The Board adopted ALJ finding 40 that "Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s teeth" and ALJ conclusion 9 that "Dr. Brown impermissibly delegated dental work to a non-dentist in one instance." Although the ALJ attributed no consequence for this violation, we conclude that this is substantial evidence to support the Board's order that Dr. Brown "shall pay restitution to patient T.M." Reasonable minds could have reached the same conclusion—that Dr. Brown should pay restitution when she violated statutes and rules by improperly allowing her assistants to perform non-delegable dental work on T.M. *See Sizemore*, 759 S.W.2d at 116.

## B. District Court Error

The Board also contends that the district court erred by reversing the Board's award of restitution. The district court's final judgment concluded the following:

> While the Board does have general authority to order restitution as part of its powers in disciplining dentists who are placed on probation, that power is not without boundaries. The Board is not empowered to make adjudicative findings contrary to the ALJ's findings to support such restitution. The ALJ found that Dr. Brown was not responsible for the problems that T.M. had with her teeth, ALJ Findings Nos. 30-39, Conclusion No. 8. Therefore, the Board erred in awarding restitution for T.M. in this case.

The district court impliedly concluded that the Board made findings contrary to the ALJ's findings and therefore, should have complied with section 2001.058(e) by providing a written reason and basis for making contrary findings supporting restitution. *See* TEX. GOV'T CODE ANN. § 2001.058(e). Apparently determining that the Board failed to comply, the district court concluded that the Board erred in awarding restitution. We disagree with this reasoning.

19

In reversing the restitution award, the district court relied on the following ALJ findings of fact:

30.　Dr. Brown suggested to T.M. that she wear a night guard to prevent damage to her teeth.

31.　T.M. refused to wear the night guard, and her teeth cracked, causing her pain.

32.　Dr. Brown treated T.M.'s pain and referred her to an endodontist for root canals.

33.　T.M. did not return to Dr. Brown for the placement of crowns until over one year after the root canals were performed.

34.　During the intervening year, T.M.'s teeth super-erupted, leaving little clearance for crowns.

35.　T.M. did not complete Dr. Brown's treatment plan, thereby damaging tooth number 15.

36.　There is no evidence in the record showing the condition of T.M.'s teeth at or near the time the crowns were seated.

37.　The erosion into the dentin on tooth number 15 was caused by T.M.'s continued bruxism.

38.　The flat crown on tooth number 19 was required due to T.M.'s bruxism.

39.　The missing porcelain on tooth number 18 was due to T.M.'s bruxism.

The district court referenced ALJ conclusion of law 8 which provides that "[b]ased on the findings of fact, Dr. Brown did not violate the minimum standard of care with respect to the treatment of T.M.s teeth . . . ." These findings and the conclusion address the standard of care that the ALJ concluded was not breached by Dr. Brown in her treatment of T.M.

Section 2001.058 applies only when a state agency changes a finding of fact or conclusion of law. *Id.* In this case, the Board did not make adjudicative findings contrary to the ALJ's findings. Based on our review of the record, the Board's order of restitution

20

was based on the ALJ finding that Dr. Brown allowed a non-dentist employees to adjust occlusion on T.M.'s teeth and the ALJ conclusion that Dr. Brown impermissibly delegated T.M.'s dental work to a non-dentist in one instance, both of which were adopted by the Board. We cannot conclude that the Board made findings and conclusions contrary to those identified in the district court's final judgment. Therefore, the district court erred when it reversed the Board's award of restitution.

## C. Harm

Dr. Brown asserts, in response to this issue, that there is no basis for the Board to order restitution for non-delegable tasks because the dental care provided to T.M. did not fall below the standard of care. However, Dr. Brown cites no authority, and we find none, to support her argument.

In this case, it is irrelevant that the ALJ found Dr. Brown did not violate the minimum standard of care with respect to the treatment of T.M. Dr. Brown allowed her non-dentist employee to adjust occlusion on T.M.'s teeth. She impermissibly delegated dental work to a non-dentist, thereby violating the law. That violation of law, as interpreted by the Board, is the basis for the award of restitution. *See* TEX. OCC. CODE ANN. § 263.002 (Vernon 2004). And, as set out above, the agency, not the court, is charged by law with discretion to fix the penalty when it determines that the statute has been violated. *See Sears*, 759 S.W.2d at 751. Adopting the ALJ's finding that Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s teeth and her conclusion that Dr. Brown impermissibly delegated dental work to a non-dentist, the Board properly based its order of restitution on this violation. Harm, in this case, is not a factor to consider in determining whether restitution should be paid. We sustain the Board's seventh issue.

21

## VI.  Board's Remaining Issues

The Board's fifth, sixth and eighth issues raise contentions related to Dr. Brown's practice of dentistry during her suspension.  By its fourth issue, the Board argues that it properly disregarded the ALJ's supporting findings of fact and properly deleted its conclusion of law that the Board's staff prevented Dr. Brown from complying with terms of her ASO, specifically her participation in a mentoring program and in the peer assistance program.  Having concluded, however, that the Board's final order is supported by substantial evidence of at least three other violations that involve unrelated conduct, we need not address these remaining issues because they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.4.

## VII.  Res Judicata

By a single issue in her cross-appeal, Dr. Brown contends that the doctrine of res judicata applies in this case.[8]  She asserts that the allegations regarding disciplinary matters that occurred in 2002—allegations that now form the basis of the present disciplinary action—were addressed in the 2002 ASO.  Because the allegations were addressed in the ASO, Dr. Brown claims that they have been finally adjudicated or, with the exercise of due diligence, should have been litigated in that earlier settlement proceeding.  The Board contends that res judicata does not apply because the ASO does not qualify as a final adjudication.

---

[8]Dr. Brown also contends that the doctrine of collateral estoppel applies.  However, her brief does not contain a clear and concise argument for this contention, with appropriate citations to authorities and to the record.  *See* TEX. R. APP. P. 38.1(i).  Dr. Brown refers us to only one collateral-estoppel case, *see Cont'l Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979), that discusses collateral estoppel, and *Marshall* is more favorable to the Board's position than her own.  In *Marshall*, the court concluded that the "actually litigated" requirement of the doctrine of collateral estoppel is generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it.  *Id.*  Unlike the present case, in *Marshall*, there was a trier of fact in the original proceeding, and the *Marshall* court ruled that the issue in dispute had been resolved by the trier of fact.  *Id.*

A.  Applicable Law and Standard of Review

In Texas courts, the doctrine of res judicata prevents the relitigation of a claim or a cause of action that has been finally adjudicated.  *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001) (per curiam); *Kaufman v. Comm'n for Lawyer Discipline*, 197 S.W.3d 867, 872 (Tex. App.–Corpus Christi 2006, pet. denied), *cert. denied*, 128 S. Ct. 331 ( 2007).  Res judicata also prevents litigation of related matters that, with the use of diligence, should have been litigated in the earlier suit.  *Miller*, 52 S.W.3d at 696; *Kaufman*, 197 S.W.3d at 872.  "The bar of a claim by res judicata requires proof of the following elements:  (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action."  *Ex parte Myers*, 68 S.W.3d 229, 232 (Tex. App.–Texarkana 2002, no pet.) (citing *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

"The question whether *res judicata* applies in a given instance is a mixed question of law and fact."  *Myers*, 68 S.W.3d at 232.  "When a matter involving both factual determinations and legal conclusions is decided by the trial court, Texas appellate courts generally use an abuse of discretion standard of review."  *Id.* (citing *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex. App.–San Antonio 1996, no writ) (per curiam)).  However, when the parties do not dispute any factual determination upon which the res judicata bar is based, as in this case, and the only issue presented for review involves a purely legal determination, the proper standard of review is de novo.  *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1990)).  Therefore, we must determine, de novo, whether there has been a final adjudication.

23

## B. Analysis

Dr. Brown's ASO included the following language:

> A mediated settlement conference was held in this case on June 10, 2003, at SOAH. . . .
>
> An agreement was reached during the *mediation* and pursuant to that agreement, [Dr. Brown] wishes to waive further formal adjudicatory proceedings. [Dr. Brown] voluntarily enters into the following Agreed Settlement Order. [Dr. Brown], by signature below, acknowledges that [she] fully understands the nature of the findings of fact and conclusions of law set out herein, that [she] has been advised of the right to legal representation, and that [she] has been given the opportunity to formally contest any Board allegations in an adjudicatory proceeding.

The ALJ and the district court judge determined that the ASO was not a final adjudication of all disciplinary matters that occurred in 2002, including the matters that form the basis of the present disciplinary action.

We agree that the proceeding that resulted in the signing of the ASO was in the nature of a mediation, not a final adjudication. The parties arrived at a settlement; the merits of the claims were not reached. There was no prior final judgment on the merits by a court of competent jurisdiction. *See Myers*, 68 S.W.3d at 232. The present appeal is not from the relitigation of a claim or a cause of action that was finally adjudicated or that should have been litigated in an earlier suit. *See Miller*, 52 S.W.3d at 696. Thus, we conclude that the issues about which Dr. Brown now complains were not finally litigated and were not matters that, with the use of diligence, should have been litigated in an earlier suit. *See Miller*, 52 S.W.3d at 696; *Kaufman*, 197 S.W.3d at 872. Dr. Brown did not establish the element of "final adjudication," and, therefore, res judicata does not apply. We overrule Dr. Brown's sole issue brought in her cross-appeal.

24

## VIII.  Conclusion

Accordingly, we reverse the judgment of the district court and render judgment reinstating the decision of the Board.


NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed
this 2nd day of April, 2009.