

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00190-CV

---

STATE BOARD FOR EDUCATOR CERTIFICATION, APPELLANT

V.

BRADLEY KEITH BOWEN, APPELLEE

---

On Appeal from the 98th District Court
Travis County, Texas
Trial Court No. D-I-GN-18-004203, Honorable Catherine Mauzy, Presiding

---

July 17, 2023

## MEMORANDUM OPINION

### Before PARKER and DOSS and YARBROUGH, JJ.

State administrative agencies possess broad discretion to determine an appropriate disciplinary sanction when licensees violate a statute or board rule.[1] When an administrative law judge (ALJ) recommends a particular sanction, it is not

---

[1] *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *State Bd. for Educator Certification v. Lange,* No. 03-12-00453-CV, 2016 Tex. App. LEXIS 1886, at *16 (Tex. App.—Austin Feb. 25, 2016, pet. denied) (mem. op.); *State Bd. for Educator Certification v. Montalvo,* No. 03-13-00370-CV, 2015 Tex. App. LEXIS 12025, at *15 (Tex. App.—Austin Nov. 24, 2015, pet. denied) (mem. op.); *Tex. State Bd. of Dental Exam'rs v. Brown*, 281 S.W.3d 692, 697 (Tex. App.–Corpus Christi 2009, pet. denied) (exercising jurisdiction via transfer from Third Court of Appeals).

presumptively binding on the agency in the same way that findings of fact and conclusions of law might be.[2]  In this teacher certification case, in which findings detailing the educator's numerous contumacious acts are undisputed and supported by substantial evidence, we hold the State Board for Educator Certification (Board) did not act arbitrarily or capriciously when revoking Appellee Bradley Bowen's Texas Educator Certificate despite such sanction being different than that recommended by the ALJ.[3]  Because the district court erred when it reversed the Board's Final Decision and Order, we reverse the judgment of the district court and render judgment reinstating the decision of the Board.

## Background

On April 26, 2017, the staff of the Texas Education Agency, Educator Leadership and Quality Division, filed a petition on behalf of the Board seeking disciplinary action to revoke Bowen's educator certificate.  Bowen answered, and the case was referred to the

---

[2] *Id.*  "The mere labeling of a recommended sanction as a conclusion of law or as a finding of fact does not change the effect of the ALJ's recommendation."  *Brown*, 281 S.W.3d at 697.  When a state agency's disciplinary decision differs from that proposed by the administrative law judge, it must comport with TEX. GOV'T CODE § 2001.058(e).  *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 781 (Tex. App.—Austin 2005, pet. denied).

[3] *See State v. Pub. Util. Comm'n of Tex.,* 883 S.W.2d 190, 204 (Tex. 1994) ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."); *Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510 (Tex. App.–Austin 2007, no pet.) (holding that under substantial-evidence review, courts presume that agency's decision is valid and supported by substantial evidence and explaining that complaining party has burden of proving otherwise).

State Office of Administrative Hearings (SOAH) for hearing. Among other things, allegation was made that Bowen violated Standard 1.7[4] of the Educators' Code of Ethics.[5]

The matter proceeded to a contested case before the ALJ. Following the hearing, the ALJ issued a Proposal for Decision (PFD) containing findings of fact and conclusions of law. One of the ALJ's conclusions of law upheld the allegation that Bowen violated Standard 1.7 of the Code. It is not productive or necessary to list every one of the 108 findings of fact, but we summarize several of the most pertinent findings here. In 2015-16, Bowen taught seventh grade math at a Texas middle school. A 12-year-old described as "Student A" was in Bowen's math class. Later, Bowen asked that Student A also be placed in his study hall.[6] During the year, Bowen and the student regularly interacted. Student A was "friendly, helpful, and polite to" Bowen, and Bowen "frequently said that Student A was his favorite student." Bowen once showed another student that Student A was his favorite by "eras[ing] that student's name and excitedly [writing] Student A's name in its place."

On May 18, 2016, Student A's mother met with school administrators and reported that Bowen's actions made Student A feel very uncomfortable. This was the mother's

---

[4] This standard provides:

(1)(G) **Standard 1.7**. The educator shall comply with state regulations, written local school board policies, and other state and federal laws.

19 TEX. ADMIN. CODE § 247.2 (1)(G), (J), (3)(B), (F), (H), (I).

[5] *See* 19 TEX. ADMIN. CODE §§ 247.1 (State Board for Educator Certification, Purpose and Scope; Definitions), 2 (Code of Ethics and Standard Practices for Texas Educators).

[6] "Student A never objected to being assigned to Respondent's study hall."

first time to ask that Student A be removed from Bowen's class. The school reassigned Student A to another teacher's math class for the remainder of the school year.

With only a few days remaining in the school year, but less than one week after Student A's mother met with school officials, the school's principal and assistant principal met with Bowen to discuss Student A. The school's principal issued several directives to Bowen, which ordered:

a) There will be no contact with [Student A].[7]

b) There will be no contact with [Student A's] family.

c) If the family reaches out to [Respondent], he is to report it to administration immediately.

d) If [Student A] reaches out to [Respondent] in any manner, he is to report it to administration immediately.

e) It [is] strongly recommended that [Respondent] be aware of his surroundings and avoid time alone with any one student, especially before and after school. Classroom doors should always be open when tutoring or helping students with math or otherwise.

f) It [is] strongly recommended that [Respondent] not discuss this incident with staff other than administration or counselor.

g) It [is] strongly recommended that [Respondent] carefully exam[ine] his social media for contacts with students, present or otherwise.

These directives were said to greatly upset Bowen, who desired to discuss the matter with Student A's parents. After the directives were issued, Bowen saw Student A's parents at a supermarket; each said hello.[8] Bowen and the student's mother also

---

[7] The directives' bracketed material appears in the original.

[8] There is no evidence that Bowen reported this to the school's administration.

exchanged several text messages.[9]  In one exchange, the mother told Bowen that the family wanted no contact with him.

When the new school year began, Student A was in the eighth grade.  Despite the principal's instruction to have no contact with Student A or the family (as well as the mother's admonitions by text), Bowen had the following interactions the first month, in August 2016:

- He stood next to Student A at an all-school assembly;

- As Student A once passed Bowen in the hall, he quietly whispered, "Say hi."

- When Bowen was performing lunch duty, he sometimes talked to students who sat next to Student A.

- Bowen told another teacher that during lunch duty, he once spoke to another student sitting next to Student A and said he missed his former students, including one student in particular.

- Student A worked in the school's office.  Bowen was frequently in the school's office when Student A worked.  Bowen once told another in the office that he had lost a lot of weight since May 18, 2016 (the date Student A's mother met with school officials).  Bowen also once approached the desk in the office where Student A sat, "and said to no one directly, 'I really need to talk to someone's parents.'"

- Student A told Bowen to contact the parents by phone.

- Bowen sometimes waved to Student A's mother as she drove in the line to pick up the student.

- Bowen and Student A's mother sent text messages to each other.[10]

One of Bowen's colleagues at the time, "R.S.," teaches eighth grade math; the two teachers' classroom doors were within a few feet of each other.  R.S. was Student A's

---

[9] There is no evidence that Bowen reported this to the school's administration before August 22, 2016.

[10] There is no evidence that Bowen reported this to the school's administration before August 22, 2016.

5

eighth grade math teacher. Despite the principal's recommendation to not discuss the incident with school staff, Bowen discussed and sent messages to R.S. about the matter involving Student A. Among other things, Bowen told R.S. the following:

- Tutoring Student A again "would be a dream come true";

- Student A was "like a daughter" to Bowen;

- Bowen wanted to communicate with Student A's parents to seek closure;

- Bowen planned to go to the car pick-up line when he was not on duty so that he could wave to Student A's mother as she drove by; and

- Student A had waved and smiled at Bowen, and that made him very happy.

On August 17, 2016, R.S. made a report to the assistant principal. One day after R.S.'s report, the school issued Bowen a second set of directives, which specified the following:

a) You will have no contact with [Student A].

b) You will have no contact with [Student A's] family.

c) If [Student A] reaches out to you in any manner, you will report this to administration.

d) You will have your door open and visible by staff when meeting/tutoring with student(s).

e) You will follow the [school][11] Employee Handbook guidelines on p. 46–47 under Ethical Conduct toward Students.

f) You will not discuss this incident with other staff members on campus.

---

[11] Bracketed material added; all other brackets are in the original.

Nevertheless, even after the second set of directives were issued, Bowen continued to discuss the Student A matter with R.S. On August 22, 2016, Bowen was placed on administrative leave. He resigned from employment one week later.

Again, despite the directives that had been given to him, Bowen announced his resignation to Student A's mother by text message. Bowen was seen on other occasions in the vicinity of Student A and the family. For example, in October 2016, Bowen saw Student A's parents at a supermarket and said hello to them. Student A also saw Bowen three times after his resignation: (1) holding a sign, (2) at a Nativity scene, and (3) at a splash pad:

- Regarding Bowen holding a sign, Student A and the mother saw Bowen parked in his vehicle on the side of a road. He then exited the vehicle and held a sign that read, "God Forgives" or "Jesus Forgives." This made Student A and the mother upset and fearful; Student A cried.

- In December 2016, Student A saw Bowen and his children at a distance while attending a Nativity scene; hundreds of others were also present. Student A made eye contact with Bowen and left. Bowen also left, making Student A feel anxious.

- In the summer of 2017, Bowen and his children visited a splash pad; Bowen parked his vehicle next to the mother's vehicle. Student A and the mother saw Bowen and left. Bowen allegedly watched as Student A left. Student A reported feeling ill and like crying when seeing Bowen and where he had parked.

The ALJ made additional findings of fact (summarized below); the parties on appeal disagree about their importance:

- Student A is afraid to see [Bowen].

- There is no evidence that [Bowen] ever had sex with, made sexual advances toward, or used sexual language with Student A or any other child. There is no evidence that [Bowen] had sexual feelings for Student A.

- There is no evidence that [Bowen] and Student A had a romantic relationship or that [Bowen] solicited such a relationship.

7

- There is no evidence that [Bowen] attempted to be alone with Student A.

- [Bowen] has taught math for 13 years, has taught 1,000 students, and is an excellent teacher.

- No prior complaint has ever been made against [Bowen] by a student, a parent of a student, a school, a school district, or the Texas Education Agency (TEA).

- Over the years, [Bowen] has demonstrated a deep concern for the well-being of children.

In its final conclusion of law, the ALJ recommended that the Board issue a non-inscribed reprimand to Bowen for his violation of Standard 1.7.[12]

When the Board held its hearing to consider the PFD and issue a final order, Student A and parents appeared in person. Student A's parents addressed the Board and read prepared statements requesting permanent revocation of Bowen's educator's certificate. Student A stood at the mother's side as the mother tearfully delivered her plea. A representative for the TEA made oral argument that largely reiterated the reasons provided by the parents; he recommended that the Board accept the ALJ's findings and conclusions, except for the final conclusion of law, and that Bowen's license be suspended for two years. Counsel for Bowen also made a statement to the Board where he emphasized the ALJ's findings and pointed out that the statement from the parents did not constitute evidence. A Board member then offered her opinion that based on the findings of fact there was "no question" that Bowen was exhibiting "grooming behaviors" and "incapable of following a directive to stay away from a student, and [who] brought

---

[12] A "'non-inscribed' reprimand is a formal, unpublished censure that does not appear on the face of the educator's virtual certificate." 19 TEX. ADMIN. CODE § 249.3(46)(B). It is "the least serious sanction the Board can impose." *Madden v. State Bd. for Educator Certification,* No. 03-11-00584-CV, 2014 Tex. App. LEXIS 5444, at *13 (Tex. App.—Austin May 22, 2014, pet. denied) (mem. op.); *see* 19 TEX. ADMIN. CODE § 249.15(a) (Disciplinary Action by State Board for Educator Certification).

harm to a student." That Board member proposed a motion that the Board permanently revoke Bowen's teaching certificate.

The Board adjourned to executive session. After it returned, the Board voted to adopt the ALJ's findings of fact and all but one of the conclusions of law.[13] Consistent with the Board member's proposal, the Board modified the final conclusion of law to order permanent revocation of Bowen's educator certificate. It later prepared a signed written order reflecting the same.

Consistent with its obligations under section 2001.058(e) of the Texas Government Code,[14] the Board explained that it modified the recommended sanction because the ALJ did not properly apply Board rules and policies. The Board pointed out from the ALJ's findings that Bowen flouted the school's two directives by continuing to contact Student A and the family after being prohibited from doing so, and by continuing to discuss his feelings about Student A with another staff member after being directed to stop. The Board found that Bowen's repeated conduct was flagrant, premeditated, and intentional, and that Bowen concealed his conduct from school administrators. Moreover, the Board referred to the findings of fact that Bowen's conduct made Student A feel uncomfortable,

---

[13] As indicated above, the ALJ concluded that Bowen violated Standard 1.7 of the Educators' Code of Ethics ("The educator shall comply with state regulations, written local school board policies, and other state and federal laws."). The other conclusions of law determined that the evidence did not show Bowen violated Standards 1.10, 3.2, 3.6, 3.8, or 3.9 of the Educators' Code; or lacked good moral character; or is unworthy to instruct.

[14] When a state administrative agency rejects an ALJ's recommended sanction against a licensee, the decision implicates TEX. GOV'T CODE ANN. § 2001.058(e). *Granek*, 172 S.W.3d at 781. This requires the agency to show, in writing, at least one of the following: (1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions; (2) that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or (3) that a technical error in a finding of fact should be changed. TEX. GOV'T CODE ANN. § 2001.058. Bowen's complaint to the trial court regarding section 2001.058(e) was solely limited to whether the Board properly found "grooming behaviors."

9

afraid, and upset, and was thus potentially dangerous to the health and welfare of students and detrimental to the student victim of the conduct. The Board also made the following statement:

> Mr. Bowen's repeated violation of the directives regarding prohibited student contact are indicative of grooming behavior.

The Board stated that Bowen's repeated violations "show that Mr. Bowen was not able to rehabilitate himself," and "require[] a stronger sanction than the non-inscribed reprimand the Administrative Law Judge recommended." Finally, the Board stated that a permanent revocation of Bowen's teaching certificate will not only allow Bowen time to reflect on his behavior, but will "better deter other Texas educators from violating school district directives and policies than a non-inscribed reprimand."

Bowen filed suit for judicial review of the Board's final order in a Travis County district court. Though he framed his brief to track the grounds for reversal identified in TEX. GOV'T CODE ANN. § 2001.174(2),[15] his arguments were threefold: (1) the Board improperly permitted Student A and parents to appear and for the parents to speak at the hearing;[16] (2) no evidence supports the Board's statement that Bowen engaged in conduct indicative of grooming behavior;[17] and (3) the punishment (revocation of a license) did not fit the crime (violating school policy) in light of Bowen's teaching

---

[15] *See also Scally v. Tex. St. Bd. of Med. Exam'rs*, 351 S.W.3d 434, 440 (Tex. App.—Austin 2011, pet. denied) (identifying the grounds on which the Administrative Procedures Act authorizes reversal or remand of an administrative agency's decision that prejudices a licensee's substantial rights).

[16] "In short, the Board violated its own rule by allowing individuals who should not have been allowed to present information about the case to it outside its normal process for doing so."

[17] "[T]he Fact Findings cited by the Board affirmatively refute or fail to support the conclusion that Mr. Bowen was engaged in 'grooming behavior.'"

experience.[18]  Bowen did not challenge the evidence supporting the ALJ's findings of fact (that were adopted by the Board) or argue that his conduct was legally protected.

The court reversed the Board's order, concluding the order was (1) arbitrary and capricious and characterized by abuse of discretion and clearly unwarranted exercise of discretion; (2) made through unlawful procedure; (3) affected by other error of law (i.e., denial of due process); and (4) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole.  The Board brought this appeal.[19]

**Analysis**

Via two issues, the Board challenges each reason articulated by the district court for setting aside the final order.  We address the Board's second issue first.

1. The Board Followed Lawful Procedures When Considering and Entering the Final Order.

We begin with the Board's argument that it acted consistent with Bowen's due process rights when considering and entering its final order.  Bowen does not direct us to any alleged violations of procedure other than to assert that Student A's parents should not have been permitted to speak at the hearing; nor do we find additional theories in our own review.  The Board's rules expressly permit parties to make oral argument before the

---

[18] "It is unreasonable to conclude that a teacher who does not comply with directives is so pernicious that no school district in the state is to be permitted to offer him or her employment . . . ."

[19] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

11

Board issues an order. 19 TEX. ADMIN. CODE § 249.38. Moreover, Board policies allow some time for the public to make comments about agenda and non-agenda items. Per board policy, oral argument is not evidentiary and may not include presentation of new facts or testimony. After the parents' comments, Bowen's attorney reminded the Board that the comments did not constitute evidence. When the Board returned to announce its sanction, it discussed the findings of fact contained in the PFD.

Based on the entire record, we do not find that the Board failed to follow lawful procedures when considering the evidence and argument, or when issuing a final order. We judge the comments at the hearing in light of what the entire record reveals. *Pedernales Elec. Co-op., Inc. v. Pub. Util. Comm'n of Tex.*, 809 S.W.2d 332, 341 (Tex. App.—Austin 1991, no writ). This case presents a starkly different set of facts than those in matters in which a procedural violation was found, such as *Tex. State Bd. of Med. Examiners v. Nacol*, 696 S.W.2d 687, 688 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). There, the record revealed that at the medical board hearing, (1) "[t]he Board acted like prosecutors rather than fact[-]finders and, in voting, used the word 'guilty' to the allegations, rather than 'true.'"; (2) the board considered vials that were never introduced into evidence; and (3) there was evidence of possible intimidation of a witness, who testified under subpoena after being assured of immunity.

In this case, there is no evidence that the parents presented new evidence that differs from the ALJ's undisputed findings of fact. Other than recommending a different sanction, the statements by the representative of the TEA are consistent with those of the parents; Bowen does not allege any procedural deprivation caused by the representative's remarks. Rather than complain of the content of the statements,

12

Bowen's complaint appears to be that the presence of the parents and Student A "injected extreme emotion and anger into the Board's deliberations which, based on the video of the Board member who made the motion to revoke Mr. Bowen's certificate . . . arguably, if not certainly, influenced the Board." (ellipsis added). However, the extent to which a display of emotion may (or may not) have somehow influenced individual Board members is a speculative task we will not venture to undertake here. *See City of Frisco v. Tex. Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. App.—Austin 1979, writ ref'd n.r.e.) ("The thought processes or motivations of an administrator are irrelevant in the judicial determination whether the agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence."). We hold there is no evidence that the presentations by the parents violated Bowen's procedural rights or unfairly prejudiced the Board's decision.

Here, Bowen was given notice of the intent to revoke his license and an opportunity to be heard. He was provided notice of the ALJ's findings supporting the application to revoke his license, an opportunity to contest those findings, and an opportunity to argue why circumstances did not warrant the imposed sanction. Bowen also utilized his right to use counsel to participate and defend him, and his attorney properly reminded the Board to render its decision based on the evidence, not on the parents' comments. There is no indication the Board failed to heed counsel's instruction. We hold that the proceedings of the Board met the requirements of due process of law and the rudiments of fair play. *See Grace v. Structural Pest Control Bd. of Tex.*, 620 S.W.2d 157, 160 (Tex. App.—Waco 1981, writ ref'd n.r.e.).

We sustain the Board's second issue.

## 2. The Board's Final Order Was Not Arbitrary or Capricious or Characterized by Any Abuse of Discretion.

Having determined that the Board's hearing afforded Bowen with the requisite process, we next examine whether the Board had any basis for imposing a disciplinary sanction greater than that recommended in the PFD. Here and in the trial court below, Bowen devoted much of his briefing to the question of whether the administrative record contains substantial evidence that Bowen engaged in "grooming." The Board's brief does not mention grooming when complaining of the trial court's order. For purposes of this opinion, we will therefore assume that the Board's comments and its order's finding regarding grooming were "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E).

However, our analysis does not end here. Per section 2001.174, reversal of the Board's order is only mandated when the "substantial rights of the appellant have been prejudiced" because of an incorrect administrative finding, inference, conclusion, or decision. *Id.* In other words, notwithstanding the improper findings regarding grooming, Bowen's substantial rights are not prejudiced if an independent ground for revoking his license is supported by substantial evidence. *See Brown*, 281 S.W.3d at 704–05 ("When an agency offers more than one ground as the basis for its decision, we will affirm if we find substantial evidence supporting one ground even if all bases given would be independently sufficient to support the decision."); *Tex. State Bd. of Med. Examiners v. Scheffey*, 949 S.W.2d 431, 436 (Tex. App.—Austin 1997, pet. denied) ("This Court need only find substantial evidence supporting one ground for suspension in order to uphold the Board's order . . . ."). It is therefore necessary to assess whether substantial evidence

supports the Board's explanations for why a non-inscribed reprimand would be inappropriate as a sanction.[20]

In a review for substantial evidence, this Court examines the record to determine whether the evidence constitutes more than a mere scintilla; thus, the evidence "may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021). We presume the agency's order is valid and that its findings, inferences, conclusions, and decisions are supported by substantial evidence; the burden to prove otherwise rests with Bowen. *Id.* at 427. "[W]e will sustain an agency's finding if reasonable minds could have reached the same conclusion." *Hinkley v. Tex. Bd. of Med. Exam'rs*, 140 S.W.3d 737, 743 (Tex. App.—Austin 2004, pet. denied). Ultimately, we assess whether the Board's order is reasonable, not necessarily correct. *Cty. of Reeves v. Tex. Comm'n on Envtl. Quality*, 266 S.W.3d 516, 528 (Tex. App. —Austin 2008, no pet.).

No party contests the 108 findings of fact made by the ALJ—or 14 out of its 15 conclusions of law. In addition to the complained-of comment regarding "grooming behaviors" as a reason for permanently revoking Bowen's license, the member additionally argued from the findings of fact that Bowen "was incapable of following a directive to stay away from a student, and [who] brought harm to a student."[21] It is undisputed that Bowen did just that—and violated Standard 1.7 of the Educators' Code of Ethics by repeatedly violating the orders of school administrators to cease

---

[20] *See* TEX. GOV'T CODE ANN. § 2001.058(e); *Granek*, 172 S.W.3d at 781.

[21] Bowen never complains of this statement as improper or unsupported by evidence.

communicating with Student A, the student's family, and school staff. Bowen also violated Standard 1.7 when he failed to report these contacts to school officials. Violating the Educators' Code of Ethics is listed among the conduct authorizing the Board to impose sanctions by revoking an educator license. 19 TEX. ADMIN. CODE § 249.15(a)(4), (b)(3). The Board's exercise of discretion to impose a harsher sanction than the ALJ is not a matter this Court will second-guess, particularly in light of the undisputed facts and the legal authority that is unchallenged here. *See State Bd. for Educator Certification v. Demiglio,* No. 13-21-00331-CV, 2023 Tex. App. LEXIS 2242, at *13 (Tex. App.—Corpus Christi Apr. 6, 2023, no pet.) (mem. op.).[22]

Given the substantial evidence confirmed by the undisputed record, we hold that the district court erred by reversing the Board's revocation of Bowen's educator certificate. "The district court was prohibited from substituting its own judgment for that of the Board's judgment on the weight of the evidence or questions committed to the Board's discretion." *Id.* at 8; *see* TEX. GOV'T CODE ANN. § 2001.174. We sustain the Board's first issue.

## Conclusion

We reverse the district court's judgment and render judgment affirming the Board's decision.

Lawrence M. Doss
Justice

---

[22] The Board also detailed its reasons for its departure from the ALJ's proposed sanction by identifying six factors in 19 TEX. ADMIN. CODE § 249.17(c) that it believed weighed in favor of revoking Bowen's educator certificate: (1) the seriousness of the violation; (2) that Bowen's conduct was pre-meditated and intentional; (3) that Bowen attempted to conceal his misconduct; (4) that the conduct was a potential danger to the health and welfare of students; (5) that the conduct had a negative effect on the victim; and (6) that the conduct was repeated. *See* 19 TEX. ADMIN. CODE §§ 249.17(c)(1)–(3), (5), and (10).